## Thomas Dugas *v.* Lumbermens Mutual Casualty Company
## (5700)

Daly, Bieluch and Foti, Js.

Argued February 18—decision released April 19, 1988

*Michael Brodinsky,* with whom, on the brief, was *Patrice S. Noah,* for the defendant (appellant).

*Juri E. Taalman,* with whom was *Nicholas G. Sarantopoulos,* for the appellee (plaintiff).

Daly, J. The defendant, Lumbermens Mutual Casualty Company, appeals from a judgment granting the application of the plaintiff, Thomas Dugas, to vacate an arbitration award. We find error.

The matter was decided by the arbitrator upon a stipulation of facts submitted by the parties. Those pertinent to this inquiry are as follows: On April 17, 1982, the plaintiff was injured when his automobile was involved in a collision. At the time of the accident, the plaintiff's vehicle was insured by the defendant. The insurance policy provided uninsured motorist cover-

age of $40,000, basic reparations benefits of $5000 and added reparations benefits, bringing the maximum amount of all reparations benefits to $25,000. The parties stipulated that the plaintiff's total claim for personal injuries was worth at least $40,000. The defendant paid the plaintiff $5000 under the basic reparations benefits coverage, and an additional $8316.63 under the added reparations coverage, for a total payment of $13,316.63. The plaintiff also collected $20,000 from the driver of the other automobile involved in the collision.

The defendant conceded in the stipulation of facts that the statutory lien on the proceeds of a tort recovery pursuant to General Statutes § 38-325 (b) is subject to the provision that the insurer contribute toward the attorney's fees incurred in recovering damages from the tortfeasor.[1] The defendant did not concede, how-

[1] General Statutes § 38-325 provides, in pertinent part: "(a) Except as provided in this section, an insurer does not have, and may not directly or indirectly contract for, any right of subrogation to the proceeds of any cause of action of a recipient of basic reparations benefits against any person or organization not entitled to an exemption from liability under section 38-323.

"(b) Whenever a person who receives basic reparations benefits for an injury recovers damages, either by judgment or settlement, from the owner, registrant, operator or occupant of a private passenger motor vehicle with respect to which security has been provided under this chapter or from a person or organization legally responsible for his acts or omissions, the insurer is entitled to reimbursement from the claimant to the extent that said basic reparations benefits have been paid, minus an amount which represents the insurer's contribution toward attorney's fees for the collection of basic reparations benefits. Such amount shall be computed by multiplying the total amount of such reasonable attorney's fees and costs, by a fraction, the numerator of which shall be the amount of basic reparations benefits received by the claimant and the denominator shall be the amount of damages recovered by the claimant, less court costs. In no event shall such amount exceed one-third the amount of the basic reparations benefits to be reimbursed to the insurer. The insurer shall have a lien on the claimant's recovery for the amount to which he is entitled for such reimbursement; provided no such lien shall attach until such time as the proceeds of such recovery are in the possession and control of such claimant."

ever, that it should pay a fee on any amount paid from the uninsured motorist portion of the coverage based on § 38-175a-6 (d) (3) of the Regulations of Connecticut State Agencies.[2] Accordingly, the defendant stipulated that it was willing to pay the plaintiff $20,000, decreased by $13,316.63, the amount of total reparations paid, for a net payment of $6,683.37.

The plaintiff claimed in the stipulation that he was entitled to a payment of $11,122.25. The plaintiff argues in his brief that when, as here, there is recovery from a tortfeasor, the reparations payments reimbursable to the defendant are subject to reduction by attorney's fees pursuant to General Statutes § 38-325 (b).

Pursuant to § 38-175c (a) (1) of the General Statutes, and the provisions of the automobile insurance policy issued to the plaintiff, the parties submitted the following issue to the arbitrator: "Is the insured due a net

---

[2] Regs., Conn. State Agencies § 38-175a-6 provides, in pertinent part: "MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORIST. (a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent. . . .

"(d) Limits of liability. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury, (2) paid or are payable under any workers' compensation or disability benefits law, or (3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment."

of $11,122.25 or $6,683.37." The arbitrator found "the damages suffered by Thomas Dugas from personal injuries resulting from [the] accident to be the sum of $6,683.37," and awarded the plaintiff that amount.

Thereafter, pursuant to General Statutes § 52-418,[3] the plaintiff filed an application to vacate the arbitration award in the Superior Court, arguing that the arbitrator did not decide the issue submitted to him in the stipulation of facts, that the arbitrator imperfectly executed his power and that the award was arbitrary and contrary to law. The trial court held that the arbitrator's finding, that the plaintiff suffered damages of $6683.37 from personal injuries resulting from the accident, directly conflicted with the submission in which it was stipulated that the plaintiff's total claim for personal injuries was worth at least $40,000. The court held that that finding, and, consequently, the award itself, was outside the submission, and granted the application for vacation of the award. This appeal followed.

Our Supreme Court has recently articulated the appropriate standard of judicial review of, as in this case, compulsory arbitration proceedings. "[W]here judicial review of compulsory arbitration proceedings required by § 38-175c (a) (1) is undertaken under General Statutes § 52-418, the reviewing court *must* conduct a de novo review of the interpretation and application of the law by the arbitrators." (Emphasis added.) *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 191, 530 A.2d 171 (1987). The trial court in this case did not undertake a de novo review of the arbi-

---

[3] General Statutes § 52-418 provides, in pertinent part: "(a) Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, finite and definite award upon the subject matter submitted was not made."

trator's decision. Rather, the trial court applied the standard of review applicable to voluntary arbitration proceedings: that the reviewing court need only examine the submission together with the award to determine whether the award conforms to the submission. Id., 186; *Trumbull* v. *Trumbull Police Local 1745,* 1 Conn. App. 207, 212, 470 A.2d 1219 (1984). The trial court's vacation of the arbitration award based on the latter standard was erroneous. The trial court is required to conduct a de novo review of the interpretation and application of the law by the arbitrator.[4] *American Universal Ins. Co.* v. *DelGreco,* supra.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this decision.

In this opinion the other judges concurred.

---

[4] In this case, the arbitrator did not undertake an examination of the applicable law in reaching its decision. Under these circumstances, *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 530 A.2d 171 (1987), requires the trial court to interpret and apply the relevant law.