******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL J. FERRI, TRUSTEE, ET AL. *v.*
NANCY POWELL-FERRI ET AL.
(SC 19432)
(SC 19433)

Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Syllabus*

The plaintiffs M and A, the trustees of two trusts established for the sole
benefit of the defendant F, sought a declaratory judgment to determine,
inter alia, whether they were authorized to decant certain assets from
one trust to the other. Specifically, the plaintiffs transferred a substantial
portion of the assets from the first trust, which permitted F to withdraw
principal, to a second trust, which did not. The defendant P, who had
previously filed a separate action seeking the dissolution of her marriage
to F, filed a counterclaim seeking a judgment declaring that the plaintiffs
lacked authority to decant and alleging, inter alia, breach of fiduciary
duty. The trial court determined that the plaintiffs were not authorized
to decant 75 percent of the assets in the first trust because F had a
vested, irrevocable interest in those assets. The trial court ordered the
plaintiffs to restore that amount to the first trust and awarded P attor-
ney's fees. In separate appeals, the plaintiffs and F claimed that the trial
court had incorrectly determined that the plaintiffs lacked authority to
decant, that P lacked standing to challenge the plaintiffs' actions, and
that the trial court improperly awarded attorney's fees to P. In her cross
appeal, P claimed that the trial court improperly declined her request
to remove M from his position as a trustee and also asserted, as an
alternative ground for affirmance, that the second trust should be treated
as self-settled. Thereafter, this court certified certain novel questions
of Massachusetts law to the Massachusetts Supreme Judicial Court
regarding, inter alia, the plaintiffs' authority to decant. *Held*:

1. The trial court incorrectly determined that the plaintiffs did not have
   authority to decant assets from the first trust: on the basis of the Massa-
   chusetts Supreme Judicial Court's thorough and well reasoned decision
   in response to this court's certified questions, this court concluded
   that, under Massachusetts law, the plaintiffs were empowered to decant
   substantially all of the assets from the first trust to the second trust.

2. The trial court correctly determined that P had standing to challenge the
   plaintiffs' actions and to assert a counterclaim: the issue of standing is
   procedural and, therefore, governed by Connecticut law, under which
   P had a colorable claim of injury sufficient to confer standing because
   the decanting of assets from the first trust, which could be included in
   the marital estate, directly affected the dissolution court's ability to
   make equitable financial orders; moreover, the plaintiffs having named
   P as a defendant in their declaratory judgment action and having
   acknowledged that she claimed an interest in the trusts assets, P had
   a right to be heard on the remedy that the plaintiffs sought.

3. The trial court abused its discretion in awarding attorney's fees to P: in
   the absence of evidence demonstrating bad faith or other egregious
   conduct by the plaintiffs, P had failed to demonstrate that the present
   case qualified for an exception to the general rule that each party must
   bear his or her litigation expenses; the trial court's partial reliance on
   a Massachusetts statute (chapter 215, § 45) to award P attorney's fees
   was misplaced, that statute having authorized an exception to the general
   rule only in cases originating in a probate court.

4. This court could not conclude that the trial court had abused its discretion
   in declining to remove M from his position as a trustee on the ground
   that he had a conflict of interest that compromised his ability to adminis-
   ter the second trust: the plaintiffs had the authority to decant assets
   from the first trust, and, in the absence of actual proof of M's breach
   of fiduciary duty, the mere assertion of a cause of action for such
   breach against M in his capacity as a trustee did not support the remedy
   of removal.

5. P could not prevail on her claim that the judgment of the trial court
   should be affirmed on the alternative ground that, because F had been

entitled to withdraw 75 percent of the assets from the first trust, the second trust was effectively self-settled; in light of the trial court's undisputed factual finding that F took no active role in planning, funding, or creating the second trust, this court could find no authority for the proposition that the second trust should be considered self-settled.

Argued November 12, 2015—officially released August 8, 2017

*Procedural History*

Action for a judgment declaring that the plaintiffs, as trustees, had validly exercised their authority to transfer certain assets from one trust to another trust and that the named defendant had no right, title or interest in the trust to which the assets were transferred, brought to the Superior Court in the judicial district of Hartford, where the case was transferred to the judicial district of Middlesex; thereafter, the named defendant filed a counterclaim; subsequently, the court, *Munro, J.*, granted the named defendant's motion to strike an affidavit, denied the plaintiffs' motion for summary judgment, granted in part the named defendant's motion for summary judgment, rendered judgment thereon in favor of the named defendant on certain counts of her counterclaim, and ordered certain other relief; thereafter, the plaintiffs appealed and the named defendant cross appealed, and the defendant Paul John Ferri, Jr., filed a separate appeal. *Reversed in part*; *judgment directed.*

*Dominic Fulco III*, with whom was *John W. Larson*, for the appellants and cross appellees in SC 19432, and the appellees in SC 19433 (plaintiffs).

*Kenneth J. Bartschi*, with whom were *Karen L. Dowd* and, on the brief, *Thomas P. Parrino* and *Laura R. Shattuck*, for the appellee an cross appellant in SC 19432, and the appellee in SC 19433 (named defendant).

*Jeffrey J. Mirman*, with whom, on the brief, was *Alexa T. Millinger*, for the appellant in SC 19433 (defendant Paul John Ferri, Jr.).

*Opinion*

EVELEIGH, J. These appeals arise from a declaratory judgment action filed by the plaintiffs, Michael J. Ferri and Anthony J. Medaglia, who are the trustees of a trust created by Paul John Ferri, Sr., in 1983 (1983 trust) solely for the benefit of his son, the defendant, Paul John Ferri, Jr. (Ferri).[1] Specifically, the plaintiffs sought a judgment declaring that they were authorized to decant certain assets from the 1983 trust and that the named defendant, Nancy Powell-Ferri, had no right, title, or interest in those assets. On appeal, the plaintiffs and Ferri assert, inter alia, that the trial court incorrectly concluded that the plaintiffs did not have authority to decant the 1983 trust because Ferri had a vested and irrevocable interest in its assets. We disagree. In light of the opinion issued by the Massachusetts Supreme Judicial Court in response to this court's certified questions; see *Ferri* v. *Powell-Ferri*, 476 Mass. 651, 72 N.E.3d 541 (2017); we conclude that, under Massachusetts law, it was proper for the plaintiffs to have decanted assets from the 1983 trust, and, therefore, we reverse the judgment of the trial court on that issue. We also reverse the trial court's award of attorney's fees to Powell-Ferri in this matter. We affirm the judgment of the trial court in all other aspects.

The following facts and procedural history are relevant to this appeal. "Powell-Ferri filed an action for dissolution of her marriage to Ferri on October 26, 2010 . . . . Ferri is the sole beneficiary of [the 1983 trust, which was] created by his father, Paul John Ferri, Sr. . . . . The plaintiffs were named as trustees of the 1983 trust. Michael Ferri is Ferri's brother and business partner.

"The 1983 trust provides that, after Ferri attained the age of thirty-five, he would have the right to withdraw principal from the trust in increasing percentages depending on his age. In March, 2011, while the underlying dissolution action was pending, the plaintiffs created a second trust whose sole beneficiary was Ferri (2011 trust). The plaintiffs then distributed a substantial portion of the assets in the 1983 trust to the 2011 trust.[2]

"Unlike the terms of the 1983 trust, the terms of the 2011 trust do not allow Ferri to withdraw principal. Instead, under the terms of the 2011 trust, the plaintiffs have all of the control and decision-making power as to whether Ferri will receive any of the trust income or assets.

"The trial court found that Ferri did not have a role in creating the 2011 trust or decanting any of the assets from the 1983 trust. The trial court further found that it was undisputed that Ferri took no action to recover the trust assets when Michael Ferri informed him of the creation of the 2011 trust and the decanting of the assets. The trial court characterized the reasoning

behind this inaction as follows: '[Ferri] does not want to [bring a legal action against] his family . . . and he believes the [plaintiffs] are acting in his best interest.'

"After the plaintiffs created the 2011 trust and transferred the assets from the 1983 trust to it, they instituted the present declaratory judgment action seeking a ruling from the court that they had validly exercised their authority in transferring the assets and that Powell-Ferri had no interest in the 2011 trust assets. Powell-Ferri filed a counterclaim asserting claims of common-law and statutory fraud, civil conspiracy, and seeking a declaratory judgment. After the trial court struck counts alleging fraud and conspiracy, Powell-Ferri filed a second amended counterclaim, later revised, asserting claims of breach of fiduciary duty, breach of loyalty, tortious interference with an expectancy, and seeking a declaratory judgment, as well as [a cross complaint alleging that Ferri had breached his duty to preserve marital assets during the pendency of their marital dissolution action by failing to take any affirmative steps to contest the decanting of certain assets from a trust by the plaintiffs]." (Footnote in original.) *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 225–26, 116 A.3d 297 (2015).[3]

The trial court agreed with Powell-Ferri that the plaintiffs were not allowed to decant assets from the 1983 trust because Ferri had a vested irrevocable interest in 75 percent of those assets and that, therefore, the 1983 trust document did not authorize the plaintiffs to decant that portion of the trust. The trial court determined that Massachusetts law allowed for decanting, generally, but only if the specific trust language gave the plaintiffs absolute and uncontrolled discretion or an analogous power. The trial court held that the 1983 trust, which granted the plaintiffs the power to "segregate irrevocably," did not encompass the type of absolute power necessary to decant the 1983 trust. Instead, the court held that in construing the "segregate irrevocably" language, it needed to look at the entire context of the trust document. The court decided that because the language "segregate irrevocably for later payment to [Ferri]" was followed by a paragraph stating that the plaintiffs "shall pay to [Ferri] . . . as he may from time to time request in writing," the 1983 trust made clear that the funds were for payment to Ferri and that the plaintiffs were obligated to pay if and when Ferri requested payment. The trial court further stated that, even though Ferri had not requested a distribution from the 2011 trust, the plaintiffs could avoid paying him under the terms of the 2011 trust, which would frustrate the payment provisions of the 1983 trust.

Although the trial court found that the decanting violated the terms of the 1983 trust, it did not order restoration of the entire 1983 trust. Instead it ordered the plaintiffs to restore 75 percent of the assets to the 1983 trust. The court found that, at the time of decanting,

Ferri did not have any right to direct, control or receive 25 percent of the trust corpus, and, therefore, the plaintiffs were authorized to decant that portion of the 1983 trust. These appeals followed.[4]

On appeal, the plaintiffs and Ferri claim that, under Massachusetts law, the plaintiffs were authorized to decant the entirety of the 1983 trust. Specifically, the plaintiffs and Ferri assert that Massachusetts law allowed the decanting because the terms of the 1983 trust unambiguously granted the plaintiffs such power. The plaintiffs and Ferri further claim that Ferri's unexercised right of withdrawal did not restrict the plaintiffs ability to decant. Next, the plaintiffs and Ferri claim that Powell-Ferri lacked standing to challenge the plaintiffs' actions. Finally, the plaintiffs and Ferri claim that Powell-Ferri was not entitled to an award of attorney's fees. In her cross appeal, Powell-Ferri claims that the trial court improperly refused to remove Michael Ferri from his position as a trustee of the 1983 trust. Powell-Ferri also asserts, as an alternative ground for affirming the judgment of the trial court, that the 2011 trust was effectively self-settled. We address each of these questions in turn.

I

The resolution of the first issue in this appeal presented a novel issue of Massachusetts trust law—namely, whether the trial court correctly determined that the plaintiffs did not have authority to decant the assets of the 1983 trust. Therefore, we certified the following three questions to the Massachusetts Supreme Judicial Court: (1) "Under Massachusetts law, did the terms of [the 1983 trust] empower [the plaintiffs] to distribute substantially all of its assets . . . to [the 2011 trust]?" (2) "If the answer to [the first question] is 'no,' should either [75 percent] or [100 percent] of the assets of the 2011 [t]rust be returned to the 1983 [t]rust to restore the status quo prior to the decanting?" (3) "Under Massachusetts law, should a court, in interpreting whether [Paul John Ferri, Sr.] intended to permit decanting to another trust, consider an affidavit [from him], offered to establish what he intended when he created the 1983 [t]rust?" The Massachusetts Supreme Judicial Court answered the first and third questions in the affirmative.[5] *Ferri* v. *Powell-Ferri*, supra, 476 Mass. 663–64. We adopt the Massachusetts Supreme Judicial Court's thorough and well reasoned decision in full.[6] On the basis of that decision, we conclude that the trial court incorrectly determined that the plaintiffs did not have authority to decant the 1983 trust and, accordingly, reverse the judgment of the trial court on that issue.[7]

II

The plaintiffs and Ferri also claim that the trial court incorrectly concluded that Powell-Ferri had standing

to challenge the plaintiffs' actions of decanting the 1983 trust and to assert her counterclaims against the plaintiffs in connection with their actions as trustees. Specifically, the plaintiffs and Ferri claim that, because Powell-Ferri is not a beneficiary of the 1983 trust, she cannot challenge the plaintiffs' actions as trustees. We disagree.

The trial court determined that Powell-Ferri had standing to challenge the plaintiffs' actions related to the 1983 trust. The trial court concluded that "[t]he 1983 trust is marital property under Connecticut law. Therefore, [Powell-Ferri] had an inchoate interest in that property, both for itself and for the value it represented in the equitable distribution of the entire estate by and between the parties. That is, in fashioning the orders, the court would be cognizant of the trust value as it apportioned both other assets and as it determined any alimony order that might enter." (Footnote omitted.)

We begin by setting forth our standard of review. Although the choice of law provision in the 1983 trust dictates that matters of substance will be analyzed according to Massachusetts law, procedural issues such as the standard of review are governed by Connecticut law. See *Montoya* v. *Montoya*, 280 Conn. 605, 612 n.7, 909 A.2d 947 (2006). The issue of standing is also a procedural issue and is, therefore, governed by Connecticut law.[8] *People's United Bank* v. *Kudej*, 134 Conn. App. 432, 438, 39 A.3d 1139 (2012) (applying Connecticut law to issue of standing under contract with choice of laws provision indicating that substantive matters should be governed by Massachusetts law).

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury. Similarly, standing exists to attempt to vindicate arguably protected interests. . . .

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this spe-

cific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Smith* v. *Snyder*, 267 Conn. 456, 460–61, 839 A.2d 589 (2004).

"The issue of standing implicates subject matter jurisdiction . . . . [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. . . . Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." *May* v. *Coffey*, (Internal quotation marks omitted.) 291 Conn. 106, 113, 967 A.2d 495 (2009).

Powell-Ferri did not "set the judicial machinery in motion." *Smith* v. *Snyder*, supra, 267 Conn. 460. The plaintiffs did that when they filed their declaratory judgment action seeking a post hoc ratification of their decision to decant the 1983 trust. The plaintiffs named Powell-Ferri as a defendant and acknowledged that she claimed an interest in the trust assets. In view of this fact, Powell-Ferri had a right to be heard. See, e.g., *Kerrigan* v. *Commissioner of Public Health*, 279 Conn. 447, 450 n.3, 904 A.2d 137 (2006) (noting that parties enjoy "the full panoply of rights" such as right to file brief and to participate in oral argument). While the plaintiffs may have only requested the relief they wanted, once they put the question before the court concerning the validity of their actions, the court had the authority to fashion appropriate relief. See *Pamela B.* v. *Ment*, 244 Conn. 296, 308–309, 709 A.2d 1089 (1998). Therefore, we conclude that Powell-Ferri had a right to be heard on the remedy as well.

Powell-Ferri has standing to challenge the plaintiffs' actions because their actions regarding the 1983 trust directly affect the dissolution court's ability to make equitable financial orders in the underlying dissolution action. Under Connecticut law, the 1983 trust was a marital asset because Ferri had an absolute right to withdraw up to 75 percent, and later 100 percent, of the principal, which constituted a "sufficiently concrete" right to include the trust assets in the marital estate. *Bender* v. *Bender*, 258 Conn. 733, 749, 785 A.2d 197 (2001). Pursuant to General Statutes § 46b-81, the dissolution court had authority to assign any and all of these assets from Ferri to Powell-Ferri. Further, pursuant to General Statutes § 46b-82, the dissolution court had to consider these assets in fashioning alimony. Thus, the trial court's resolution of the declaratory judgment action had a direct impact on Powell-Ferri's rights in the underlying dissolution action. Accordingly, she had a colorable claim of injury, which is all that was required to confer standing to challenge the decanting.

Further, the plaintiffs' reliance on the Restatement (Third) of Trusts is unavailing. Specifically, the reporter's note on § 94 of the Restatement (Third) of Trusts, which pertains to the question of standing, explicitly provides that the rule established is "consistent in principle with § 200 of Restatement [(Second) of Trusts] . . . ." Comment (d) to § 200 of the Restatement (Second) of Trusts, in turn, provides as follows: "A person who has an interest in the subject matter of trust, although he is not a beneficiary of the trust, can maintain a suit against the trustee to prevent injury to his interest in the subject matter of the trust. This is not a suit, however, to enforce the trust. Thus, if the trustee of a term for years threatens to commit waste, the remainderman can maintain a suit to enjoin him." In the present case, it is claimed that the plaintiffs' actions have frustrated Powell-Ferri's equitable claims to a marital asset, namely, the 1983 trust. Therefore, she had the right to take action to protect her interest.

Accordingly, we conclude that the trial court correctly determined that Powell-Ferri had standing to challenge the plaintiffs' actions in decanting the 1983 trust and to bring her counterclaim for relief against the plaintiffs.

### III

The plaintiffs and Ferri also challenge the decision of the trial court to award attorney's fees. We declined to certify this issue to the Massachusetts Supreme Judicial Court because it did not present a novel question of Massachusetts law. The plaintiffs and Ferri assert that the trial court mistakenly applied Massachusetts law rather than Connecticut law, and that Connecticut law does not allow for an award of attorney's fees. In the alternative, they claim that, even if Massachusetts law applies, it does not authorize an award of attorney's fees. We conclude that, under the law of either state, the trial court improperly awarded attorney's fees in the present case.

We begin with the standard of review applicable to this claim. "This court reviews a trial court's decision to award attorney's fees for an abuse of discretion. . . . This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Lyme Land Conservation Trust, Inc.* v. *Platner*, 325 Conn. 737, 759, 159 A.3d 666 (2017).

First, we disagree with the parties that the resolution of this issue requires us to determine whether Massachusetts or Connecticut law applies. Instead, we conclude that the law of both states on awarding attorney's fees is consistent because both states follow the American rule.

As we recently explained, "[w]hen it comes to attorney's fees, Connecticut follows the American Rule. . . . Pursuant to that rule, attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." (Citation omitted; internal quotation marks omitted.) Id., 759–60; see also *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, 282 Conn. 576, 582, 923 A.2d 697 (2007). Similarly, "[t]he usual rule in Massachusetts is that the litigant must bear his own expenses . . . . This is the so-called American [r]ule." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Wilkinson* v. *Citation Ins. Co.*, 447 Mass. 663, 669, 856 N.E.2d 829 (2006). Both states have few exceptions to the rule; for example, a specific contractual provision or a statute may provide for recovery, and both states allow recovery for bad faith or other egregious conduct. *ACMAT Corp.* v. *Greater New York Mutual Ins. Co.*, supra, 582; *Police Commissioner* v. *Gows*, 429 Mass. 14, 17–18, 705 N.E.2d 1126 (1999). In the present case, there was no finding of bad faith or other egregious conduct on the part of the plaintiffs.[9]

The trial court applied Massachusetts law to the issue of attorney's fees, relying on *In re Estate of King*, 455 Mass. 796, 920 N.E.2d 820 (2010), and Massachusetts General Laws c. 215, § 45, to justify its award of fees in the absence of bad faith or egregious conduct. This reliance was misplaced. Although Massachusetts law does contain a statutory exception to the American rule that allows for an award of attorney's fees in the absence of bad faith, this exception applies only to cases originating in a probate court. Under § 45, the *Probate Court* has discretion to shift fees and costs even if the claims and defenses of the losing party were not wholly insubstantial and frivolous.[10] In *In re Estate of King*, supra, 803 n.12, the Massachusetts Supreme Judicial Court "expressly recognized that in this limited context, § 45 gives the Probate Court authority that is not available to the Superior Court . . . in the exercise [of its equitable] jurisdiction." See also *Wong* v. *Luu*, 472 Mass. 208, 220 n.21, 34 N.E.3d 35 (2015) (holding that statute applies only in probate proceedings).

In the present case, Powell-Ferri has not demonstrated that the present case qualifies for an exception to the general rule that each party must each bear his or her own expenses of litigation. Accordingly, we conclude that the trial court abused its discretion in awarding attorney's fees.

## IV

Powell-Ferri claims that the trial court abused its discretion in refusing to remove Michael Ferri as a trustee because he has an untenable conflict of interest that compromises his ability to administer the trust. Powell-Ferri claims that, because she has counterclaimed against him for breach of fiduciary duty, and the claim survived the plaintiffs' motion to strike, Michael Ferri is exposed to personal liability if the claim succeeds. Powell-Ferri further claims that the threat of personal liability impairs his ability to execute his fiduciary duty objectively. We disagree.

"Whether grounds exist for an executor's removal is a question addressed to the sound discretion of the Probate Court. . . . On appeal from probate, the trial court may exercise the same discretion de novo, reviewing the facts relating to the propriety of removal without regard to the Probate Court's decision. . . . Our task, then, is to determine whether the trial court abused its discretion in refusing to remove the defendant as executor of the . . . estate.

"An important aspect of an executor's fiduciary responsibility is the duty to maintain an undivided loyalty to the estate. . . . [O]ne interested in an estate has the right to have its representative wholly free from conflicting personal interests . . . . When the executor of an estate places itself in a position where its interests conflict with those of the estate, the executor's ability to represent fairly the interests of the estate is irreparably tainted. When [such] a situation appears . . . it is the positive duty of the court to remove the executor . . . ." (Citations omitted; internal quotation marks omitted.) *Ramsdell* v. *Union Trust Co.*, 202 Conn. 57, 65, 519 A.2d 1185 (1987).[11]

Powell-Ferri requested that the trial court remove Michael Ferri as a cotrustee of the 2011 trust since she had brought a fiduciary duty counterclaim against him in his capacity as trustee. The trial court, reviewing the record before it, denied the removal request. In so doing, the trial court found as follows: "Such a remedy is not appropriately addressed to the [plaintiffs]. As of yet, there has been no finding of a breach of duty by them, notwithstanding Powell-Ferri's vigorous argument that such a finding has already been made by this court. . . . There is no specter of harmful conduct imminent or proposed by the [plaintiffs]. These remedies [of removal] are denied." (Citation omitted.)

In her cross appeal, Powell-Ferri does not, and cannot, attack that factual finding by the trial court. Rather, she argues that the mere assertion of a cause of action for breach of fiduciary duty against one of the cotrustees gives rise to a remedy of removal of the cotrustee. As the trial court concluded, however, those allegations, without actual proof, do not support removal of a

trustee. Furthermore, in light of the Massachusetts Supreme Judicial Court's conclusion that the plaintiffs had the authority to decant the 1983 trust, we cannot conclude that the trial court abused its discretion in failing to remove Michael Ferri as a trustee.

V

Powell-Ferri asserts, as an alternative ground for affirmance, that, because Ferri was entitled to 75 percent of the trust at the time of the divorce, the 2011 trust was effectively self-settled. We disagree.

In support of her claim, Powell-Ferri cites the rule that "[a] trust which names the settlor as a beneficiary is invalid to the extent of the settlor's beneficial interest." *In re Brooks*, 217 B.R. 98, 103 (Bankr. D. Conn. 1998). The trial court rejected this argument in one sentence, determining that the rule did not apply in this case because Ferri was the settlor of neither the 1983 trust, which was created by his father, nor the 2011 trust, which was created by the plaintiffs.

Because resolution of this issue turns on construing trust language and applying legal principles, it is subject to plenary review. *Palozie* v. *Palozie*, 283 Conn. 538, 547, 927 A.2d 903 (2007). General principles of Connecticut self-settled trust law, as reflected in *Greenwich Trust Co.* v. *Tyson*, 129 Conn. 211, 219, 27 A.2d 166 (1942), illustrate that "[t]he attempt of a man to place his property in trust for his own benefit under limitations similar to those which characterize a spendthrift trust is a departure from the underlying basis for the creation of such trusts." Under Connecticut law, a trust is self-settled if a settlor places his or her assets into trust for his or her own benefit. Id. In the present case, however, there is no dispute that the plaintiffs created the 2011 trust and decanted the 1983 trust assets without informing the beneficiary in advance and without his permission, knowledge, or consent. Because the beneficiary of the 2011 trust had no involvement whatsoever in the creation or funding of the 2011 trust, the trust cannot be self-settled under Connecticut law.

Although Powell-Ferri acknowledges that § 3 (1) of the Restatement (Third) of Trusts, defines the settlor as "[t]he person who creates a trust," she notes that comment (a) to that rule recognizes that "[i]n some contexts significant questions may arise concerning the person who is properly to be treated as the settlor of a trust." However, comment (f) to § 58 of the Restatement (Third) of Trusts discusses those "[c]ircumstances in which [a] beneficiary is [the] settlor" and provides in relevant part that, in addition to a situation in which a beneficiary "actually conveyed the property to the trust or executed the trust instrument, or was designated as settlor," a beneficiary also may be deemed to be the settlor if "the beneficiary pay[s] the consideration in return for which another transferred the property to

fund the trust." Similar to Connecticut case law, these principles recognizes that a beneficiary can only be deemed to be a settlor of a trust if he or she has some affirmative involvement with the creation or funding of the trust. In the present case, the trial court determined that, although Ferri may have been entitled to withdraw the funds, he was still required to request the moneys from the plaintiffs, which was never done. Therefore, it was proper, as held by the Massachusetts Supreme Judicial Court, for the plaintiffs to have decanted the entire trust. See *Ferri* v. *Powell-Ferri*, supra, 476 Mass. 661–62. In the 2011 trust, any distribution of funds rests in the discretion of the plaintiffs.

In light of the trial court's finding that Ferri took no active role in planning, funding, or creating the 2011 trust, we can find no authority for the proposition that it should be considered self-settled. Accordingly, we reject Powell-Ferri's alternative ground for affirmance.

The judgment is reversed with respect to the plaintiffs' authority to decant the 1983 trust and the case is remanded with direction to render summary judgment in favor of the plaintiffs on the counts of their complaint seeking a declaratory judgment; the judgment is also reversed with respect to Powell-Ferri's motion for attorney's fees and the case is remanded with direction to deny that motion; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

* This case was originally argued before a panel of this court consisting of Justices Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson. Thereafter, Justice Zarella retired from this court and did not participate in the consideration of the case. The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] We note that, although Medaglia subsequently resigned from his position as trustee, he remains a plaintiff in the underlying action. On June 11, 2013, the trial court granted a motion seeking to add a new trustee, Maurice T. FitzMaurice, as a party plaintiff. Because the facts underlying this appeal do not involve FitzMaurice, in the interest of simplicity, we refer to Michael Ferri and Medaglia collectively as the plaintiffs and individually by name.

[2] "Ferri testified in his deposition that he thought the 1983 trust was worth between $60 and $70 million at some point before this transfer." *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 225 n.2, 116 A.3d 297 (2015).

[3] The trial court granted summary judgment in favor of Ferri on the cross complaint, which had alleged that Ferri breached his duty to preserve marital assets during the pendency of the dissolution action by failing to take any affirmative steps to contest the decanting. The trial court granted summary judgment on the ground that Powell-Ferri had failed to plead a legally sufficient cause of action, and we affirmed that decision on appeal. *Ferri* v. *Powell-Ferri*, supra, 317 Conn. 226–28, 116 A.3d 297 (2015).

[4] The plaintiffs and Ferri appealed, and Powell-Ferri cross appealed, from the judgment of the trial court to the Appellate Court. We then transferred these appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] During the trial, the plaintiffs sought to introduce an affidavit from Paul John Ferri, Sr., declaring that he intended for the plaintiffs to have the power to decant the 1983 trust at any time. He stated that he "intended to give to the [plaintiffs] the specific authority to do whatever he or she believed to be necessary and in the best interest of [Ferri] with respect to the income and principal . . . notwithstanding any of the other provisions . . . ." The affidavit also stated that, even though the 1983 trust allows for Ferri to request increasing amounts of principal as he aged, the plaintiffs nevertheless could, and indeed should, irrevocably set aside the trust principal if they

believed that it was in Ferri's best interest. Powell-Ferri objected to the affidavit as parol evidence and the trial court agreed. Specifically, the trial court found that the affidavit was parol evidence and was not necessary to the disposition of the case because the 1983 trust document was clear and unambiguous. In its decision, the Massachusetts Supreme Judicial Court indicated that it would have been proper for the trial court, pursuant to Massachusetts law, to have considered this affidavit. *Ferri* v. *Powell-Ferri*, supra, 476 Mass. 663. Because this issue was resolved by the Massachusetts Supreme Judicial Court, we need not address it further in this opinion.

[6] On appeal, Powell-Ferri also claims that the accounting of the 1983 trust should have included the entire fair market value of the trust. Because the Massachusetts Supreme Judicial Court upheld the decanting, we need not consider this claim. See *Ferri* v. *Powell-Ferri*, supra, 476 Mass. 661–62.

[7] Because the Massachusetts Supreme Judicial Court concluded that the plaintiffs had the authority to decant the 1983 trust and we reverse the judgment of the trial court as it relates to that issue, including the order of the trial court requiring the plaintiffs to restore 75 percent of the assets to the 1983 trust, we need not address Powell-Ferri's claim regarding the restoration order. See *Ferri* v. *Powell-Ferri*, supra, 476 Mass. 661–62.

[8] In reaching its conclusion, the trial court determined that, because the issue of standing is substantive, the law of Massachusetts was applicable to the determination of standing. We disagree that Massachusetts law governs whether Powell-Ferri had standing to bring her claims in the present case. Therefore, the cases cited by the plaintiffs and Ferri are inapposite to a consideration of standing based on Connecticut law.

[9] Powell-Ferri cites cases purporting to establish exceptions to the American rule that authorize an award of attorney's fees in the present case. These cases are inapposite. In the first case, *Mangiante* v. *Niemiec*, 98 Conn. App. 567, 568, 910 A.2d 235 (2006), the Appellate Court upheld an award of attorney's fees to a beneficiary who established that a trustee had breached her fiduciary duty. In the present case, Powell-Ferri has failed to establish that the plaintiffs had breached their fiduciary duty. In the second case, *Palmer* v. *Hartford National Bank & Trust Co.*, 160 Conn. 415, 417–19, 279 A.2d 726 (1971), a few beneficiaries, at their own expense, benefitted an entire class of beneficiaries by successfully restoring assets to a trust. We held that, under the facts presented in that case, the beneficiaries could be awarded attorney's fees from the trust because there was an actual and direct benefit to the trust. Id., 423-25. Because the Massachusetts Supreme Judicial Court upheld the decanting, Powell-Ferri ultimately did not restore any assets to the 1983 trust and, thus, provided no benefit to its corpus.

[10] Massachusetts General Laws c. 215, § 45, provides in relevant part: "In contested cases *before a probate court* or before the supreme judicial court on appeal, costs and expenses in the discretion of the court may be awarded to either party, to be paid by the other, or may be awarded to either or both parties to be paid out of the estate which is the subject of the controversy, as justice and equity may require. In any case wherein costs and expenses, or either, may be awarded hereunder to a party, they may be awarded to his counsel or may be apportioned between them. . . ." (Emphasis added.)

[11] "Although executors . . . are not trustees, they occupy a position in many respects analogous [to trustees] . . . ." (Internal quotation marks omitted.) *Hall* v. *Schoenwetter*, 239 Conn. 553, 559, 686 A.2d 980 (1996).